IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

|  |  |
|---|---|
| | * |
| JOSEPH CRUSSIAH, | |
| | * |
| Plaintiff, | |
| | * |
| v. | Civil Action No. PX 15-2516 |
| | * |
| CAROL ATTIA et al., | |
| | * |
| Defendants. | |

******

## MEMORANDUM OPINION

Pending and ready for resolution are separate motions to dismiss filed by Defendants

Carol Attia ("Ms. Attia"), Anjana Dhar, M.D. ("Dr. Dhar"), and Luc Oke, M.D. ("Dr. Oke").

ECF Nos. 12, 13, 18. The relevant issues have been fully briefed and the court now rules

pursuant to Local Rule 105.6 because no hearing is necessary. This court will GRANT the

motions to dismiss as to all defendants.

## I.  BACKGROUND

The facts outlined here are taken from the Complaint, liberally construed in the light most

favorable to Plaintiff Joseph Crussiah ("Plaintiff").[1]

In 2013, Plaintiff began seeking medical treatment for an undisclosed medical condition.

ECF No. 1 at 5–6, 56–57; ECF No. 1-9 at 2. To assist in the diagnosis, Plaintiff's treating

---

[1] On July 7, 2016, Plaintiff moved to "supplement" his Complaint. ECF No. 32. Because such a motion does not exist, the Court will construe Plaintiff's Request as one to amend the Complaint to include additional factual allegations. Pursuant to Rule 15, motions for leave to amend should be "freely" granted "when justice so requires." Fed. R. Civ. P. 15. However, the Court may deny the motion where the proposed amendment would be futile. *McGaw v. Biovail Pharm., Inc.*, 300 F. Supp. 2d 371, 373 (D. Md. 2004); *Grice v. Colvin*, No. GJH-14-1082, 2016 WL 1065806, at *7 (D. Md. Mar. 14, 2016). Most of Plaintiff's "supplement" is simply a restatement of facts and claims already alleged in his original Complaint. Any additional claims Plaintiff states in his amendment would not survive a motion to dismiss. Accordingly, the Court denies Plaintiff's Motion at ECF No. 32.

physician ordered a magnetic resonance imaging procedure ("MRI") for Plaintiff from Capital

Imaging, LLC ("Capital Imaging") in Bethesda, Maryland. *Id.* at 56. An MRI test requires

intravenously injecting contrast into the patient's arm to help facilitate a clear image.[2] While the

allegations in the complaint are less than a model of clarity, Plaintiff appears to claim that the

MRI technician had difficulty finding a vein in which to inject the substance and, as a result,

accidently injured him. *Id.* Plaintiff also alleges that the technician injected Plaintiff with an

unusually large volume of the substance, causing him to lose consciousness. While he was

unconscious, Plaintiff alleges that a technician at Capital Imaging sexually assaulted him. ECF

No. 1 at 5–6, 56–57. Additionally, Plaintiff alleges that his health became progressively worse

over the next several months because of the inadequate treatment received. *Id.* at 14.[3]

Sometime later in 2014, Plaintiff became eligible for Medicaid (*id.* at 14), and enrolled in

MedStar Family Choice; the Medicaid Managed Care Organization (MCO) of MedStar Health.

*Id.* at 23. MedStar referred Plaintiff to four private physicians, doctors Anthony Macarthy,

Anjana Dhar, Asmir Syed, and Luc Oke (collectively, the "Defendant doctors") for medical care.

*MedStar Family Choice*, http://www.medstarfamilychoice.com/ (last visited July 19, 2016)

(identifying defendant doctors as private physicians in the Medstar MCO). The remaining

defendant, Carol Attia, currently serves as the Assistant Vice President of Care Management for

MedStar Family Choice Maryland.

On October 15, 2014, Plaintiff visited Dr. Dhar's office in Silver Spring, Maryland, to

secure written proof of his workplace disability for potential employers so that he could receive

---

[2] Plaintiff alleges that Capital Imaging injected water into his vein. ECF No. 1 at 57. However, in one of the reports attached to his Complaint, he alleges the substance was gadolinium. ECF No. 1 at 9.

[3] In a related case, Crussiah alleges that Defendant Inova Hospital had engaged in fraud when Crussiah's physician, Dr. Sonalee Kulkarni, deleted records of the botched MRI that Crussiah received at Capital Imaging. *See Crussiah v. Inova Health System*, No. PX-14-4017.

necessary accommodations. ECF No. 1 at 21–22, 28. Plaintiff alleges that during this visit, Dr.

Dhar performed a "diagnostic test" on Plaintiff "that revealed that one of the two arteries in the

left arm, the ulnar artery [sic] is injured." *Id.* at 28, 31. The damaged artery was allegedly caused

by the botched MRI test. According to Plaintiff, Dr. Dhar must have realized that Plaintiff had

been sexually assaulted during the MRI because there is no other reason why the ulnar artery

would be injured. *Id.* at 28–29. Plaintiff alleges that instead of reporting the sexual assault, Dr.

Dhar blamed Plaintiff for the incident because he did not take steps to prevent the attack. ECF

No. 1 at 29. Plaintiff also alleges that Dr. Dhar tried to benefit from Plaintiff's assault by

conspiring to conceal evidence that the assault occurred or "sell the Plaintiffs rights"—conduct

that Plaintiff calls "unjust enrichment." ECF No. 1 at 7–8, 29.[4] Additionally, Plaintiff alleges that

Dr. Dhar failed to give Plaintiff a complete physical examination, failed to properly diagnose

Plaintiff with certain medical conditions, and failed to keep a proper record of Plaintiff's visit.

ECF No. 1 at 31–33. Dr. Dhar was unable to complete the requested disability form because Dr.

Dhar lacked adequate medical information at that time. ECF No. 1 at 42.

Dr. Oke was the cardiologist assigned to Plaintiff through MedStar Family Choice. ECF

No. 1 at 22. During his visit with Dr. Oke, Plaintiff alleges that Dr. Oke also realized Plaintiff

had been sexually assaulted when he learned that Plaintiff was injected in an artery during a

previous MRI test. ECF No. 1 at 30.  According to Plaintiff, Dr. Oke like Dr. Dhar concealed his

findings for personal gain rather than report the assault. ECF No. 1 at 30. Plaintiff also accuses

Dr. Oke of misdiagnosing Plaintiff with certain medical conditions, improperly administering

---

[4] Plaintiff alleges conspiracy throughout his Complaint but fails to clearly articulate the claim, stating only that "[t]he Plaintiff was able to establish relationships with physicians who had no prior knowledge. Because, the facts to be concealed are very serious crimes and no malpractice; those physicians contacted the perpetrators and offered to steal and sell the Plaintiff's rights. And, conspiracies took hold." ECF No. 1 at 7.

and documenting certain cardiology stress tests, altering Plaintiff's medical records, and failing to provide Plaintiff with his medical records upon request. ECF No. 1 at 33-35.

Defendants Drs. Macarthy and Syed are accused of engaging in similar conduct. Plaintiff alleges that Dr. Macarthy failed to provide him adequate medical care and refused to treat Plaintiff when he called to schedule an appointment. ECF No. 1 at 42–43. Dr. Syed is accused of failing to provide Plaintiff with adequate medical care and failing to properly document Plaintiff's medical conditions. ECF No. 1 at 51.

Plaintiff's primary complaint against Ms. Attia is that she "devise[d] a scheme to suppress" Plaintiff's complaints against the Defendant doctors. ECF No. 1 at 24. He also alleges that Ms. Attia improperly took control of Plaintiff's medical care after he filed complaints about the treatment he received from Drs. Dhar, Oke, Macarthy, and Syed; refused to allow MedStar to provide Plaintiff with adequate medical care; and violated Plaintiff's First Amendment rights by trying to force Plaintiff to delete a YouTube video Plaintiff recorded which Plaintiff claims to be proof of MedStar's misconduct. ECF No. 1 at 25, 26, 43–45.  Plaintiff alleges that all of this was done to increase MedStar's profits at the expense of Plaintiff's well-being. ECF No. 1 at 27, 31.

On August 21, 2015, Plaintiff, proceeding *pro se*, filed a thirty-eight count complaint which set out an array of claims, including violations of Plaintiff's civil rights pursuant to 42 U.S.C. § 1983 (Counts 1, 10, 19, 28, 33), tortious interference with a contract in both Maryland and the District of Columbia (Counts 2, 3, 11, 12, 20, 21, 29, 34), fraud in both Maryland and the District of Columbia (Counts 4, 5, 13, 14, 23, 24, 30, 35), conspiracy in both Maryland and the District of Columbia (Counts 6, 7, 15, 16, 26, 31, 36), and intentional infliction of emotional distress in both Maryland and the District of Columbia (Counts 8, 9, 17, 18, 27, 32, 36). *Id.* at

4

60–69. Plaintiff also alleges Dr. Oke engaged in conversion (Count 37) and unjust enrichment (Count 38). *Id.* at 70. The sole basis for this Court's original jurisdiction arises from Plaintiff's claims brought pursuant to 42 U.S.C § 1983 and the United States Constitution. *See* 28 U.S.C. § 1343. *See also Chapman v. Houston Welfare Rights Org.*, 441 U.S. 600, 607 (1979). The Court retains supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367. ECF No. 1 at 1.

On January 28, 2016 Dr. Oke filed a Motion to Dismiss or, in the alternative, Motion for More Definite Statement. ECF No. 12. On January 29, 2016, Dr. Dhar filed a Motion to Dismiss, ECF No. 13, and Ms. Attia filed her Motion to Dismiss on February 9, 2016. ECF No. 18. For the reasons that follow, all three motions to dismiss will be GRANTED.

## II.  STANDARD OF REVIEW

The purpose of a motion to dismiss under Rule 12(b)(6) is to test the sufficiency of the complaint. *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006) (citation and internal quotation marks omitted). A complaint need only satisfy the standard of Rule 8(a), which requires a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "Rule 8(a)(2) still requires a 'showing,' rather than a blanket assertion, of entitlement to relief." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 n.3 (2007). That showing must consist of more than "a formulaic recitation of the elements of a cause of action" or "naked assertion[s] devoid of further factual enhancement." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citations omitted).

At this stage, all well–pleaded allegations in a complaint must be considered as true, *Albright v. Oliver*, 510 U.S. 266, 268 (1994), and all factual allegations must be construed in the

light most favorable to the plaintiff. *See Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 783 (4th Cir. 1999) (citing *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993)). In evaluating the complaint, unsupported legal allegations need not be accepted. *Revene v. Charles Cnty. Comm'rs*, 882 F.2d 870, 873 (4th Cir. 1989). Legal conclusions couched as factual allegations are insufficient, *Iqbal*, 556 U.S. at 678, as are conclusory factual allegations devoid of any reference to actual events, *United Black Firefighters v. Hirst*, 604 F.2d 844, 847 (4th Cir. 1979); *see also Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009); *see also Wag More Dogs, LLC v. Cozart*, 680 F.3d 359, 365 (4th Cir. 2012) ("Although we are constrained to take the facts in the light most favorable to the plaintiff, we need not accept legal conclusions couched as facts or unwarranted inferences, unreasonable conclusions, or arguments." (citations and internal quotation marks omitted)). Ultimately, a complaint must "'permit the court to infer more than the mere possibility of misconduct' based upon 'its judicial experience and common sense.'" *Coleman v. Md. Court of Appeals*, 626 F.3d 187, 190 (4th Cir. 2010) (quoting *Iqbal*, 556 U.S. at 679).

Generally, *pro se* pleadings are liberally construed and held to a less stringent standard than pleadings drafted by lawyers. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citations and internal quotation marks omitted). Liberal construction means that the court will read the pleadings to state a valid claim when at all possible from the available facts; it does not mean that the court should rewrite the complaint to include claims never presented. *Barnett v. Hargett*, 174 F.3d 1128, 1132 (10th Cir. 1999). That is, even when *pro se* litigants are involved, the court cannot ignore a clear failure to allege facts that support a viable claim. *Weller v. Dep't of Soc. Servs.*, 901 F.2d 387, 391 (4th Cir. 1990); *Forquer v. Schlee*, No. RDB–12–969, 2012 WL

6087491, at *3 (D. Md. Dec. 4, 2012) ("[E]ven a pro se complaint must be dismissed if it does

not allege a plausible claim for relief.") (citation and internal quotation marks omitted).

## III. ANALYSIS

### A.  Plaintiff's Section 1983 Claims

Plaintiff has chosen 42 U.S.C. § 1983 as the vehicle for pursuing claims in this Court,

alleging the Defendants deprived him of his federal rights under Title XIX of the Social Security

Act, which establishes regulations for the Medicaid program, because the Defendant doctors

failed to provide him adequate medical care (Counts 1, 10, 19, 28, and 33). ECF No. 1 at 2–3,

60–61. In the same Counts of the Complaint, he also alleges that Defendant doctors deprived him

of his constitutional rights under the First, Fourth, and Fourteenth Amendments. *Id.*

Section 1983 imposes liability on anyone who, acting under color of state law, deprives a

person of any "rights, privileges, or immunities secured by the Constitution and

laws."  42 U.S.C. §1983; *see also Pee Dee Health Care, P.A. v. Sanford*, 509 F.3d 204, 210 (4th

Cir. 2007). To establish liability under 42 U.S.C. § 1983, a Plaintiff must prove that, (1) the

defendant, a person, "deprived [the plaintiff] of a right secured by the Constitution and laws of

the United States;" and (2) that the defendant acted "under color of [State] statute, ordinance,

regulation, custom, or usage." *Mentavlos v. Anderson*, 249 F.3d 301, 310 (4th Cir. 2001).

Importantly, a claim under §1983 "requires *both* an alleged constitutional deprivation caused by

the exercise of some right or privilege created by the State or by a person for whom the State is

responsible, *and* that the party charged with the deprivation must be a person who may fairly be

said to be a state actor." *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 50 (1999) (emphasis in

original) (internal quotation marks and citations omitted).

The purpose of the "state actor" requirement is to "assure that constitutional standards are invoked only when it can be said that the State is *responsible* for the specific conduct of which the plaintiff complains." *Blum v. Yaretsky*, 457 U.S. 991, 1004 (1982) (emphasis in original). Establishing state action is therefore fundamental to any § 1983 claim because it "reflects judicial recognition of the fact that most rights secured by the Constitution are protected only against infringement by governments." *Dowe v. Total Action Against Poverty in Roanoke Valley*, 145 F.3d 653, 658 (4th Cir. 1998) (internal quotation marks and citations omitted).

Here, Plaintiffs § 1983 claims—the sole basis for this Court's original jurisdiction—are fatally flawed because none of the defendants are state actors, nor do they share a "sufficiently close nexus" with state actors such that the actions of the former "may be fairly treated as that of the [s]tate itself." *Jenkins v. Gaylord Entm't Co.*, 840 F. Supp. 2d 873, 884 (D. Md. 2012) (quoting *Jackson v. Metro. Edison Co.*, 419 U.S. 345, 351 (1974)). Rather, Defendants are private physicians providing medical treatment, albeit in a manner that Plaintiff believes led to his assault and injury. Because § 1983 "excludes from its reach merely private conduct, no matter how discriminatory or wrongful," *Mfrs. Mut. Ins. Co.*, 526 U.S. at 50, these claims must be dismissed.

Plaintiff argues that MedStar Health and MedStar Family Choice are state actors because they receive federal funding and Defendants share a sufficiently close nexus with these entities to satisfy the state action requirement. ECF No. 1 at 2–3.  But merely because a private entity is subject to state or federal regulation does not transform its employees or agents into state actors. *Dowe*, 145 F.3d at 655 (4th Cir. 1998) ("A plaintiff cannot invoke § 1983 simply because a private actor is regulated and funded by the State."); *see also Philips v. Pitt Cty. Mem'l Hosp.*,

572 F.3d 176, 177 (4th Cir. 2009) (state appointment of hospital's Board of Trustees not sufficient to render Board state actors).

Nor does the Defendants' participation in Medicaid and Medicare turn otherwise private individuals into state actors capable of being sued under § 1983. *See Carter v. Norfolk Cmty. Hosp. Ass'n, Inc.*, 761 F.2d 970, 972 (4th Cir. 1985) (state and federal regulation of hospital that accepts Medicare and Medicaid patients "did not constitute a sufficient nexus" to make hospital staff state actors); *Modaber v. Culpeper Meml. Hosp., Inc.*, 674 F.2d 1023, 1026–27 (4th Cir. 1982) (receipt of Medicare and Medicaid does not "make the accepting hospital's actions attributable to the state"). Instead, Plaintiff must plead facts that demonstrate a nexus so close "between the State and the challenged action of the regulated entity so that the action of the latter may be fairly treated as that of the State itself." *Blum*, 457 U.S. at 1004.

A plaintiff may do so by demonstrating that the State particularly exercised strong or coercive control over the Defendants' conduct that gave rise to Plaintiff's § 1983 claim. *See id.* ("[A] State normally can be held responsible for a private decision only when it has exercised coercive power or has provided such significant encouragement, either overt or covert, that the choice must in law be deemed to be that of the State."). Plaintiff here, however, has not and cannot make such claims with regard to the Defendant Doctors and Ms. Attia. Accordingly, Counts 1, 10, 19, 28, and 33 of Plaintiff's Complaint must be dismissed.

**B.  Supplemental Jurisdiction Over State Common Law Claims**

In light of the Court's dismissal of Plaintiff's § 1983 claims against the Defendant Doctors and Ms. Attia for want of state action, Plaintiff is left solely with state common law claims (Counts 2–9, 11–18, 29–32, and 34–38). A federal district court retains broad discretion

to dismiss a case where, as here, it "has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3); *see also Shanaghan v. Cahill*, 58 F.3d 106, 110 (4th Cir. 1995) (A court is afforded "wide latitude in determining whether or not to retain jurisdiction over state claims when all federal claims have been extinguished."). Among the factors the court considers in determining whether to exercise supplemental jurisdiction are "convenience and fairness to the parties, the existence of any underlying issues of federal policy, comity, and considerations of judicial economy." *Shanaghan*, 58 F.3d at 110. "When the balance of these factors indicates that a case properly belongs in state court, as when the federal–law claims have dropped out of the lawsuit in its early stages and only state–law claims remain, the federal court should decline the exercise of jurisdiction by dismissing the case without prejudice." *Carnegie–Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988).

Here the Court declines to exercise supplemental jurisdiction over Plaintiff's remaining state law claims. First, with respect to convenience and fairness to the parties, four of the five defendants are Maryland residents and Dr. Syed resides in Washington, DC.  Plaintiff, too, resides locally, so litigating this case in state court poses no undue inconvenience or hardship on the parties. *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966); *Applegate, LP v. City of Frederick, Maryland*, No. JKB-15-2589, 2016 WL 1427084, at *7 (D. Md. Apr. 12, 2016).  Second, Plaintiff's claims now sound exclusively in state law, and thus are most prudently addressed in state court. Conversely, no questions of federal policy are at play. Finally, because this case has just begun, little if any duplication of efforts or resources will result should the remaining claims be litigated in state court, and so on balance, favors dismissal of the remaining state law claims.

As a final matter, Defendants Dr. Macarthy and Dr. Syed have not affirmatively sought dismissal of their claims.[5] Regardless, because Plaintiff has failed to aver that either the conduct of Dr. Syed or Dr. Macarthy amounted to sufficient state action to sustain claims under § 1983, the same analysis applies to the § 1983 claims against them. Similarly, as to the remaining state law claims involving Syed and Macarthy, this Court declines to exercise supplemental jurisdiction for the reasons previously articulated. The Court, therefore, *sua sponte* dismisses Counts 10 through 27 of Plaintiff's Complaint. *See Swarey v. Desert Capital REIT, Inc.*, No. DKC 11-3615, 2012 WL 4208057, at *15 (D. Md. Sept. 20, 2012) (dismissing plaintiff's RICO claims *sua sponte* because plaintiff could not satisfy all of the elements of a RICO claim with respect to the silent defendants); *see also Carson v. NCOP Acad. for Paralegals*, No. WN-94-2263, 1995 WL 819050, at *1 (D. Md. Feb. 21, 1995) (dismissing claims *sua sponte* on a 12(b)(6) motion "where [the] plaintiff cannot be possibly awarded relief"); *Smith v. Heshmat*, No. PWG-14-679, 2015 WL 926027, at *3 (D. Md. Mar. 3, 2015) (dismissing a § 1983 claim *sua sponte*).

## IV. CONCLUSION

Defendants' motions to dismiss are granted. Plaintiff's claims brought pursuant to 42 U.S.C. § 1983 (Counts 1, 10, 19, 28, and 33) are dismissed with prejudice. Plaintiff's state law claims (Counts 2–9, 11–18, 20–27, 29–32, and 34–38) are dismissed without prejudice so that Plaintiff may pursue, if he chooses, his state law claims in state court. A separate order will follow.

---

[5] Although Dr. Macarthy appears to have been served, ECF No. 10, he has neither answered the complaint nor otherwise responded. Service was never perfected against Dr. Syed, ECF No. 9 & 23. Accordingly, the case against Dr. Syed is to be dismissed independently and without prejudice pursuant to Rule 4(m) of the Federal Rules of Civil Procedure absent a showing of good cause for Plaintiff's failure to effect service within 120 days of the filing of the Complaint. ECF No. 33.

_____7/26/2016_____                    _____/S/_____
Date                                               PAULA XINIS
                                                   United States District Judge